strawn v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-170-CR

FLORENCE BERNICE STRAWN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 30
TH
 DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

Appellant Florence Bernice Strawn appeals from her conviction for murder.  In two issues, appellant contends the trial court erred in overruling her objection to the jury pool selection method used by Wichita County and in sustaining the State’s objection to the testimony of her expert witness at punishment.  We affirm.

In her first issue, appellant argues that the trial court erred in overruling her objection to the jury pool selection method used by Wichita County. Specifically, appellant contends that Wichita County systematically excludes African Americans from the jury pool in violation of the Sixth Amendment to the United States Constitution.  U.S. 
Const.
 amend. VI.

At the hearing on appellant’s challenge to the jury venire, appellant introduced evidence showing that African Americans represent 10.2 percent of the total population in Wichita County.  The venire panel selected for appellant’s trial, however, included only one African American out of forty-eight potential jurors, representing approximately two percent of the panel.  Appellant also introduced evidence showing that out of twenty-five venire panels selected between January 8, 2001 and January 7, 2002, 3,082 potential jurors were called.  Of those persons called for jury duty who responded to the summons and whose race could be determined, 132 potential jurors were African American, or approximately 4.7 percent.
(footnote: 1)  Appellant also presented expert testimony by Dr. Joel Schmitter, a mathematician and statistician, that in fifteen out of the twenty-five venire panels, African Americans were underrepresented.  Dr. Schmitter conceded, however, that he made his calculations without taking into account the number of African Americans who were actually eligible for jury service; his calculations were based on all 10.2 percent of the Wichita County African American population being eligible to vote.

The State introduced evidence showing that jury panels are chosen randomly from a list of registered voters, licensed drivers, and persons with state identification cards.  The race of the persons on the list is not indicated, nor is it requested on voter registration applications.  There was no evidence that Wichita County intentionally prevented African Americans from registering to vote or that it removed them from juror lists.  Sharon Kaufhold, an employee of the Wichita County Clerk’s Office, also testified that she was unaware of any legal barriers that prevented African Americans from registering to vote or of the county removing African Americans from jury pools.

In order to establish a prima facie violation of the requirement that there be a fair cross section of the community represented on the jury panel, appellant must show:  (1) that the group alleged to be excluded is a “distinctive” group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.  
Duren v. Missouri
, 439 U.S. 357, 364, 99 S. Ct. 664, 668 (1979); 
Pondexter v. State
, 942 S.W.2d 577, 580 (Tex. Crim. App. 1996) 
cert. denied
, 522 U.S. 825 (1997).  Proportionate representation of races on jury panels is not constitutionally required, but the selection of the panel must be done without discrimination as to race.  
May v. State
, 738 S.W.2d 261, 269 (Tex. Crim. App.), 
cert. denied
, 484 U.S. 872 (1987). 

The State does not dispute that African Americans are part of a distinct group.  At issue is whether appellant demonstrated that representation of African Americans in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in Wichita County and whether this underrepresentation, if any, is due to systematic exclusion of African Americans in the jury selection process.  While the evidence presented by appellant showing that African Americans composed approximately 4.7 percent of venire members whose race was known may raise an inference of unfairness or unreasonableness, appellant failed to show “that the number of African-Americans who qualified for the selection process (registered voters, and those with driver’s licenses or identification cards) were of the same or similar percentages as the population of the county.”  
Pondexter
, 942 S.W.2d at 581.
(footnote: 2)  Moreover, there is no evidence that Wichita County employed measures to keep African Americans from being selected for jury duty.  
See Lacy v. State
, 899 S.W.2d 284, 288 (Tex. App.—Tyler 1995, no pet.) (“[I]t was incumbent upon Appellant to show some manner whereby African-Americans were not included in the computer base from which the panel was selected.”).  Thus, we hold the trial court did not err in denying appellant’s challenge to the jury venire.  We overrule appellant’s first issue.

In appellant’s second issue, she contends the trial court erred in sustaining the State’s objection to her expert’s testimony due to appellant’s failure to comply with article 39.14(b) of the code of criminal procedure.
  Tex. Code Crim. Proc. Ann.
 art. 39.14(b) (Vernon Supp. 2003).  Article 39.14(b) states:

On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence.  The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date the trial begins.

Id. 

Before trial, the State filed a motion to compel the designation of any expert that appellant might call at trial.  The trial court granted the motion.  During the punishment phase of trial, appellant sought to introduce expert testimony from Dr. Leon Morris.  The State objected to this proposed testimony because appellant did not disclose Dr. Morris as an expert witness who would testify at trial.  The trial court granted the State’s motion and excluded the testimony of Dr. Morris.

No Texas court has published an opinion applying article 39.14(b) to a defendant’s failure to timely disclose the identity of testifying experts pursuant to a pretrial discovery order.  Article 39.14(b) also does not specify what sanctions are required or permitted should a party fail to comply with a trial court’s discovery order.  Thus, we will look to cases discussing sanctions permitted to remedy the State’s failure to timely disclose expert witnesses for guidance.  

Courts have held that evidence wilfully withheld from disclosure under a discovery order should be excluded from evidence.  
Hollowell v. State
, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978); 
Osbourn v. State
, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), 
aff’d on other grounds
, 92 S.W.3d 531 (Tex. Crim. App. 2002).  The extreme sanction of exclusion, however, should not be imposed absent wilfulness on the part of the party failing to timely disclose the evidence.  
Osbourn
, 59 S.W.3d at 816; 
Peña v. State
, 864 S.W.2d 147, 149 (Tex. App.—Waco 1993, no pet.) (op. on reh’g).  Appellate courts review a trial court’s decision to permit or deny testimony from a witness not disclosed before trial for an abuse of discretion.  
Stoker v. State
, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989); 
Osbourn
, 59 S.W.3d at 816.  Such an appellate review usually encompasses two factors:  (1) whether the party’s action in failing to timely disclose the expert witness constituted bad faith; and (2) whether the opposing party (i.e., the State in this case) could have reasonably anticipated that the undisclosed witness would testify.  
Nobles v. State
, 843 S.W.2d 503, 514-15 (Tex. Crim. App. 1992); 
Osbourn
, 59 S.W.3d at 816.

There is no evidence in the record demonstrating that appellant’s failure to timely disclose Dr. Morris as a testifying expert was conducted in bad faith.  The State contends that evidence of bad faith exists because appellant’s trial counsel sought to persuade the trial court to hold him in contempt as opposed to excluding the expert testimony; the State believes that counsel’s request shows he acted deliberately.  Counsel’s request, however, could just as likely indicate that he did not want appellant to suffer for his shortcoming or mistake in failing to adhere to the trial court’s discovery order.  We do not believe such a request shows bad faith on appellant’s part in failing to timely disclose her expert witness.

The State also admits in its brief that it was aware that an expert had conducted a psychological examination of appellant.
(footnote: 3)  There is no other evidence, however, that appellant ever indicated to the State that he intended to use Dr. Morris as an expert.  There is also no evidence showing how the State learned of the psychological examination.  
See Hayden v. State
, 66 S.W.3d 269, 272-73 (Tex. Crim. App. 2001) (holding defendant had notice that State would introduce extraneous offense evidence where State 
delivered
 to defendant the witness statements before trial).  Thus, we agree with the State that knowledge of a doctor conducting a psychological examination of the defendant at the defendant’s request is not enough to put the State on notice that the defendant intends to call that doctor to testify as an expert, especially in light of the fact that a specific order was in place requiring pretrial disclosure of experts.  
Cf. Osbourn
, 59 S.W.3d at 816 (stating defendant had notice that State may use police officer as expert because he was arresting officer who completed offense report that was available to defendant and because he was an “
essential witness under any circumstances
” (emphasis added)).  

Appellant also contends that she sought to introduce Dr. Morris’s testimony as rebuttal evidence and could not have anticipated the need for his testimony until she learned “what theory the State would suggest to the jury.”  
Cf., e.g., Hoagland v. State
, 494 S.W.2d 186, 189 (Tex. Crim. App. 1973) (noting that the State cannot intend to introduce true rebuttal evidence before trial because the State does not know what theories the defendant will advance); 
Doyle v. State
, 875 S.W.2d 21, 22 (Tex. App.—Tyler 1994, no pet.)  (holding it is not reasonable for the State to anticipate needing undisclosed witness to rebut defense testimony that it could not foresee).  At trial on punishment, appellant argued that Dr. Morris would rebut evidence presented by the State from which the jury might have drawn the inference that appellant had the intent to kill.  By the time appellant sought to admit this rebuttal testimony at punishment, however, the jury had already decided the issue of intent and had already convicted appellant of murder.  Furthermore, appellant has not shown on appeal that Dr. Morris’s testimony was needed to rebut evidence presented by the State at punishment.  Thus, even if Dr. Morris’s testimony was properly admissible as rebuttal evidence, no harm occurred by the trial court’s exclusion of Dr. Morris’s testimony because appellant has not shown us that his testimony would have been “helpful to the jury in determining the appropriate sentence in a particular case.”  
Mendiola v. State
, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000) (quoting 
Rogers v. State
, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)); 
see also
 
Tex. R. App. P.
 38.1(h).  Under the specific facts of this case, we do not think a defendant should be permitted to avoid the requirements of an order entered pursuant to article 39.14(b) by stating that the expert is a rebuttal witness without demonstrating in some manner that the witness’s testimony was relevant to issues at sentencing.  Accordingly, we hold the trial court did not err in granting the State’s objection to Dr. Morris’s testimony.  We overrule appellant’s second issue.

We affirm the trial court’s judgment.

PER CURIAM

PANEL F:  DAY, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: May 29, 2003

FOOTNOTES
1:
Appellant’s attorney attempted to contact several people called for jury duty during this time who initially did not indicate their race.  Of the 3,082 potential jurors called for service during 2001-2002, the race of 294 jurors remains unknown.  Thus, based on the 2,788 jurors whose race is known (3,082 - 294 = 2,788), approximately 4.7 percent of them were African American (132 / 2,788 = .047).  

2:
Although appellant contends that it would have been impossible to make such a showing because the race of eligible voters is not requested by the State when voters register, we are bound by the dictates of the Texas Court of Criminal Appeals.  
See Flores v. State
, 883 S.W.2d 383, 385 (Tex. App.—Amarillo 1994, pet. ref’d). 

3:
At the hearing on the State’s motion, the State also did not dispute appellant’s trial counsel’s assertions that the State had “actual knowledge that an expert had done a psychological examination of the Defendant. . . .  So it’s hard to imagine that there’s any harm to the State since they were aware of the existence of this expert.”